Joseph F. Hawkins, J.
Petitioner, weary of playing the role of Sisyphus, brings this article 78 proceeding to compel restoration of his name to the police patrolman eligibility list. Thrice has petitioner taken the examination, and twice — apparently to the chagrin of the appointing authority — has he passed; but twice, also has he been proscribed.
*891 The respondents submit a voluminous and repetitive answer which essentially offers the following bases for rejection: petitioner’s plea of guilt to the offense of disorderly conduct on January 4, 1960; three speeding tickets; and two dismissals from private employment for absenteeism. The first, however, would appear to be the prime juridical foundation upon which the disqualification is predicated as is evident from the following excerpts from a letter sent by respondents’ counsel to petitioner’s counsel attached to the respondents’ answering affidavit as Exhibit D-l: ‘£ Mr. Brown was disqualified under Section 50, subdivision 4, Paragraph (d) of the Civil Service Law which authorizes the disqualification of an applicant or an eligible £ who has been found guilty of a crime or of infamous or notoriously disgraceful conduct.’ The basis for the disqualification was Mr. Brown’s conviction on his plea of guilty to disorderly conduct. ’ ’
The Penal Law of the State of New York clearly distinguishes crimes from offenses. Section 2 provides that a crime is either a felony or a misdemeanor. An offense is not a crime; and the offense of disorderly conduct is neither “infamous or notoriously disgraceful conduct ’ ’, to use the statute’s language. If the Civil Service Commission feels it should be accorded greater latitude in barring applicants who committed offenses which are neither infamous nor notorious but may, nevertheless, involve moral turpitude; or if the candidate is seeking employment in an especially sensitive area such as police work, its recourse is to the Legislature. It cannot do this by administrative fiat.
Respondents place much reliance on two unreported Special Term opinions. Smith v. Civil Serv. Comm. (MacAffer, J., Albany County, Jan. 31, 1955), involved two convictions for disorderly conduct; “ petitioner’s dismissal from public employment”; “ medical qualifications”, involving reports of both 1 £ medical examiner and psychiatrist ’ ’; and history of confinement and readmission to Central Islip State Hospital; also two prior separations from the Navy’s civil service. Its inapplicability to the case at bar is too obvious for extended comment. In Furman v. State Civ. Serv. (Fisher, Chautauqua County, March 2, 1956), we, again, have an appreciably distinguishable factual situation. There the applicant: £ 1 Among other things, said report reveals that while on duty as a temporary police officer, in the Village of Broeton, N. Y., petitioner gambled in public, committed an assault upon one Oliver Cool and conducted himself improperly in the Police Court presided over by Judge Elias T. Kurtz. The report of the investigator fur *892 ther reveals that petitioner, in an interview, admitted to the investigator that he gambled while on duty and in uniform, that he did commit the assault on Jack Crimmins and Oliver Cool and that he did not conduct himself properly in court. ’ ’
Such conduct in Furman (supra) in a prospective police officer is a far cry from that of the petitioner which, with some possible justification, he characterizes as a childish prank. Petitioner, further, had not reached his maturity at the time of the incident.
We must further note that nowhere in the voluminous exhibits, correspondence and “ investigators’ reports ” is there any reference to petitioner’s two years of service in the United States Marine Corps and his honorable discharge; nevertheless, there appears to have been much inquisitorial effort expended to determine whether or not petitioner’s absenteeism in private employment was voluntary or attributable to his motor vehicle not being operable.
Lastly, we note the offer or invitation that the “ Court may obtain ” further information concerning the petitioner by seeing “the record” relating to petitioner and the facts attendant upon the plea of disorderly conduct from the director of a quasi-public agency, the Society for the Prevention of Cruelty to Children, and that although ‘£ a copy of her record could not be made but that she would be willing to present the same to the Court upon the Court’s request.” Surely, the petitioner, and his counsel, deserve to be confronted by an accuser and accorded an opportunity to rebut and to explain. Frankly, the court looks askance at this invitation to conduct an extra-mural and extra-record inquisition. This extra-judicial suggestion is repugnant to the most fundamental concept of due process and is emphatically rejected.-
Oliver Wendell Holmes, many" years ago, did say that no one “has a constitutional right to be a policeman ”. (McAuliffe v. New Bedford, 155 Mass. 216, 220.) Granted this may still be good law; but if one is to be denied such right, it must be done constitutionally, i.e., in accordance with due process of law.
The circumstances revealed are conducive to no conclusion other than that the respondents have indeed been unreasonable, arbitrary and capricious. The petitioner’s motion is granted and the respondent is directed to restore petitioner to the eligibility list.